IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 5:07-CR-0428 (DEP) (LEAD CASE) |
| vs. | Criminal Action NO. 5:07-CR-406 (DEP) (MEMBER CASE) |
| JOHN MURTARI, | |
| Defendant. | Criminal Action No. 5:08-CR-0059 (DEP) |
| | Criminal Action No. 5:08-CR-0060 (DEP) |

_____

APPEARANCES:                               OF COUNSEL:

FOR THE GOVERNMENT:

HON. GLENN T. SUDDABY            RANSOM P. REYNOLDS, III, ESQ.
United States Attorney                    Assistant U.S. Attorney
Northern District of New York
100 S. Clinton Street
P.O. Box 7198
Syracuse, New York   13261-7198

FOR DEFENDANT:

JOHN MURTARI, *Pro Se*

DAVID E. PEEBLES
U. S. MAGISTRATE JUDGE

DECISION AND ORDER

This matter, which involves four separate misdemeanor informations all of which accuse defendant John Murtari of criminal contempt based upon his alleged disregard of conditional release orders issued by the court in connection with pending criminal charges, in violation of 18 U.S.C. § 401(3), implicates the court's power to set pretrial release conditions under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, restricting the defendant, while on release, from engaging in conduct which might not otherwise violate any state or federal criminal provision.  Presently before the court is a motion by the defendant seeking dismissal of the charges against him or, in the alternative, an order rescinding or narrowing the restrictions contained in one of the two disputed pretrial release orders.  In seeking dismissal, defendant asserts that the relevant provisions of the court's conditional release orders unduly restrict his freedom of speech, in violation of the First Amendment, and are therefore invalid.  Defendant also contends that the orders which he is alleged to have violated are impermissibly vague, and accordingly cannot support convictions for criminal contempt.

Having reviewed the matter in light of defendant's arguments, I find

that while the First Amendment does impose certain limitations upon the right of a court to impose release conditions, the release orders issued in this instance did not exceed those permissible bounds.  I also find that the provisions of the release orders which the defendant is accused of having violated, particularly as supplemented by the explicit verbal instructions given to the defendant in open court providing guidance with respect to the second of those orders, are not ambiguous and thus do not require dismissal, and that defendant's request for recision or modification of the second of the two release orders in issue has been rendered academic in light of the subsequent revocation of his release status.

I.      BACKGROUND

Defendant John Murtari is no stranger to the court or law enforcement officials stationed at the James M. Hanley Federal Building, located in Syracuse, New York (the "Federal Building").  For an extended period Murtari has engaged in various activities in and around the Federal Building apparently calculated to draw attention to his cause, in which he advocates for fathers' rights, and to lend support to his efforts to secure a meeting with Senator Hillary Clinton with the intent to elicit her assistance.

As a result of earlier encounters, defendant has been banned from

entering the Federal Building without permission, other than for required court appearances, and has been arrested on numerous occasions by security personnel assigned to the facility. While the majority of his arrests prior to those now at issue have resulted from the defendant's entering onto the Federal Building premises and refusing to leave when ordered to do so, some have also involved his refusal to obey explicit directions that he not write in chalk on government property adjacent to the Federal Building.

The four criminal contempt charges now pending arise from the issuance of two separate conditional release orders by the court. The first of those was issued on September 7, 2007 by Chief United States Magistrate Judge Gustave J. DiBianco, prohibiting the defendant's entry onto any portion of the property associated with the Federal Building absent prior permission from the court. *See United States v. Murtari*, Criminal Action No. 5:07-CR-387 (GJD), Dkt. No. 2. The second, issued by me on January 18, 2008, was somewhat more generous, in that while it prohibited the defendant from entering the Federal Building, absent prior permission, it permitted him to engage in certain peaceful activities in the plaza adjacent to the building provided that he did not deface or destroy

government property when doing so. *United States v. Murtari*, Criminal Action No. 5:07-CR-428 (DEP), Dkt. No. 8.

On September 27, 2007, Murtari was charged by information with having entered onto the premises of the Federal Building on that date without having obtained prior permission and refusing to leave after having been asked to do so, in violation of Judge DiBianco's September 7, 2007 order prohibiting such conduct. *See United States v. Murtari*, Criminal Action No. 5:07-CR-428 (DEP), Dkt. No. 1. After having initially appeared before me in connection with that charge, defendant was released on conditions pending disposition of that and another open criminal matter against him. In an ensuing order, I conditioned defendant's release on his continued compliance with the terms of Judge DiBianco's September 7, 2007 release order, and specifically cautioned Murtari that his refusal to sign an acknowledgment regarding the court's release conditions would not excuse the requirement of faithful compliance with those terms.

Defendant is alleged to have again entered onto the property adjacent to the Federal Building on January 15, 2008, without obtaining prior permission, and was charged by misdemeanor information with

criminal contempt arising from that act.[1]  *See United States v. Murtari,* Criminal Action No. 5:08-CR-17 (DEP).  When defendant was brought before me in connection with that charge he convincingly argued that my prior release order was ambiguous, in that it incorporated conditions from an order issued by Judge DiBianco on September 7, 2007 which was no longer in effect, based upon the fact that the case in which it was issued was closed on October 22, 2007.[2]  In light of the defendant's arguments in this regard I issued an order dated January 18, 2008 clarifying that while Judge DiBianco's order had indeed expired, the conditions contained within it, with some modification, would continue to govern the defendant's conduct while on release, having effectively been incorporated by reference into my release order issued in connection with the September

---

[1]  That information has since been dismissed by the court, on motion of the government.

[2]  On October 16, 2007, Chief United States Magistrate Judge Gustave J. DiBianco issued a written decision in that case, after conducting a non-jury trial in connection with two pending counts, one charging that Murtari willfully damaged or destroyed federal property, and the second accusing him of failing to obey a lawful directive issued by federal authorities. *See United States v. Murtari*, Criminal Action No. 5:07-CR-387, Dkt. No. 8.  In his decision, Judge DiBianco found the defendant guilty of refusing to obey a lawful directive from law enforcement officials that he discontinue his defacement of government property through chalking, in violation of 41 C.F.R. § 102-74.385, while acquitting the defendant on charges of having willfully destroyed or damaged property, in violation of 41 C.F.R. § 102-74.380(b), based upon his finding that chalking, while clearly a form of defacement, did not destroy or damage government property.  *See id.*  A judgment of conviction was subsequently entered on October 22, 2007, and the matter was closed.  *See id.,* Dkt. No. 9.

27, 2007 charge. *See United States v. Murtari,* Criminal Action No. 07-CR-428 (DEP), Dkt. No. 8. My January 18, 2008 order additionally relaxed somewhat the restrictions imposed in connection with the defendant's release, based upon an in-court discussion with him, in that it explicitly permitted Murtari to engage in certain peaceful conduct on the grounds of the Federal Building provided that his activities were in compliance with any applicable permit requirements governing such activity, and did not result in destruction or defacement of federal property. *See id.* ¶ 3. That written order specifically stated that it did not prohibit Murtari

> from engaging in peaceful conduct in the outdoor plaza area of the James Hanley Federal Building providing that he does so alone and not in concert or association with others, does not interfere with any party's access or egress to the premises or otherwise intimidate or annoy others lawfully on the property, and *does not deface or otherwise destroy government property,* and does not engage in any activity which would threaten the safety and welfare of himself or others.

*Id.* ¶ 4 (emphasis added).

Despite the issuance of that order and my specific directive that when on property adjacent to the Federal Building he is not permitted to destroy or deface government property, including through chalking, the

7

defendant is alleged to have entered onto the property on January 24, 2008, and again on January 29, 2008, and on both of those occasions defaced government property by writing in chalk.

## II. PROCEDURAL HISTORY

The defendant is currently facing four separate charges of criminal contempt. By information filed on September 17, 2007, Murtari is alleged to have violated the terms of Chief Magistrate Judge DiBianco's September 7, 2007 order by entering onto property adjacent to the Federal Building on September 13, 2007. *United States v. Murtari,* Criminal Action No. 07-CR-406 (DEP), Dkt. No. 1. A second information, filed on September 27, 2007, alleges an additional violation of Judge DiBianco's order occurring on that date, when Murtari again purportedly entered onto property adjacent to the Federal Building, refusing to leave when asked to do so by law enforcement officials. *United States v. Murtari,* Criminal Action No. 07-CR-428 (DEP), Dkt. No. 1.[3]

Murtari is also separately charged in two informations, both filed on January 29, 2008, with having violated the terms of my order issued on January 18, 2008, by entering onto premises adjacent to the Federal

---

[3] Criminal Action Nos. 07-CR-406 (DEP) and 07-CR-428 (DEP) have been consolidated, with the latter having been designated the lead case.

Building on January 24, 2008 and January 29, 2008, respectively, and on those occasions defacing government property by writing in chalk. *United States v. Murtari,* Criminal Action No. 08-CR-59 (DEP), Dkt. No. 1; *United States v. Murtari,* Criminal Action No. 08-CR-60 (DEP), Dkt. No. 1.  The defendant has appeared with respect to each of those four informations, and a non-jury trial has been scheduled to be held on March 18, 2008 in connection with them.

The court has received written submissions from the defendant which have been construed as seeking, *inter alia,* dismissal of charges against him.  In requesting dismissal, defendant asserts that the orders which he is accused of violating both abridged his rights under the First Amendment, and are unduly vague.  In light of his *pro se* status the court has construed the motions liberally as seeking dismissal of all four pending misdemeanor informations, despite bearing the caption of only the two informations filed in 2007.  The government has since responded in opposition to defendant's motion.

III.   DISCUSSION

   A.   First Amendment

In his first argument, defendant asserts that the two disputed release

orders unlawfully infringed upon his rights under the First Amendment to the United States Constitution. While the specifics of the defendant's argument are somewhat unclear, it appears that as it relates to the two informations filed in 2007, he argues that Chief Magistrate Judge DiBianco's order, in which the court prohibited the defendant from even entering peaceably onto federal property, unduly interfered with his access to a public forum in violation of his First Amendment rights. As an extension of that argument, Murtari undoubtedly asserts that the prohibition upon his ability to write on government property in chalk, as set forth in the order forming the basis of the third and fourth pending contempt charges, represents a similar interference with his First Amendment rights.

    Without question, a defendant who is under court supervision, including based upon a conditional pretrial release order, does not necessarily forfeit all of his or her First Amendment rights. Consequently, in fashioning suitable conditions to govern the defendant's release pending trial on the various charges against him in this case, the court was required to do so in a manner which would result in no greater intrusion upon defendant's constitutional rights, including those

10

guaranteed under the First Amendment, than reasonably necessary in order to effectuate the objectives of the Bail Reform Act, and to additionally insure defendant's compliance with the court's order. *Cf. United States v. Myers,* 426 F.3d 117, 124-25 (2d Cir. 2005) (examining terms of supervised release alleged to violate the defendant's constitutional rights).

    The order issued by Judge DiBianco on September 7, 2007 undeniably restricted defendant's access to a forum which otherwise would be available to him, as a member of the public, for certain activity protected under the First Amendment. That order was issued, however, based upon specific findings by the court that defendant had previously been charged and convicted of engaging in criminal conduct at the Federal Building and had "indicated that he can not assure the Court that he will not engage in identical conduct during the pendency of [the criminal proceedings in which that order was issued]." *United States v. Murtari*, Criminal Action No. 5:07-CR-387 (GJD), Dkt. No. 2. Under those circumstances I find that the order issued by Judge DiBianco was reasonable and was limited to encroaching upon defendant's First Amendment rights only to the extent necessary based upon his findings.

11

With respect to the conditional release order alleged in the 2008 informations to have been violated by the defendant, no First Amendment rights are directly implicated. As the defendant was advised in Judge DiBianco's thorough and thoughtful opinion dated October 16, 2007, the First Amendment simply does not protect or afford a right of defacement of government property, including by the use of chalk. *See United States v. Murtari,* Criminal Action No. 5:07-CR-387 (GJD), Dkt. No. 8, slip op. at 10-12) (citing, *inter alia, People for the Ethical Treatment of Animals v. Guiliani,* 105 F. Supp. 2d 294, 318 (S.D.N.Y. 2000)). The order entered in this case on January 18, 2008 did little more than attempt to insure against defendant's continued defacement of government property, in order to eliminate the need for constant supervision by federal law enforcement employees and the use of government resources to remove the chalking from the Federal Building plaza. Since the defendant's alleged defacement of government property would not constitute protected activity, his constitutional rights were not abridged as a result of the court's second release order.

B.  Specificity

In his dismissal motion, defendant also argues that the order which

12

he is alleged to have violated is unduly vague.

To properly invoke the powers of contempt, whether exercised civilly or pursuant to the criminal contempt provisions under which Murtari is now being prosecuted, *see* 18 U.S. § 401, under the circumstances now presented, a court must find that an order has been willfully violated. *See United States v. Cutler*, 815 F. Supp. 599, 607 (E.D.N.Y. 1993), *aff'd*, 58 F.3d 825 (2d Cir. 1995); *see also United States v. Greyhound Corp.,* 508 F.2d 529, 531 (7th Cir. 1974). Enmeshed within the willfulness inquiry is the question of whether the order alleged to have been flaunted was sufficiently specific to permit the accused contemnor to understand its contours. *Id.* ("[T]he order must be sufficiently clear that it leaves no doubt about what is required to be done."). "A district court may punish for disobedience of an order only if the order is clear and unambiguous." *Fonar Corp. v. Deccaid Servs., Inc.,* 983 F.2d 427, 429 (2d Cir. 1993); *see also Hess v. New Jersey Transit Rail Operations,* 846 F.2d 114, 116 (2d Cir. 1988) ("No one may be held in contempt for violating a court order unless the order is clear and specific and leaves no uncertainty in the minds of those to whom it is addressed.") (citations omitted).

There is no single, easily recited standard for determining whether

this specificity requirement has been met; rather, "[t]he clarity of an order is a question of fact which must be judged according to a reasonableness standard in the context in which it was entered and the audience to which it was addressed." *Cutler,* 815 F. Supp. at 607 (citations omitted).  In a criminal contempt case such as this, involving violation of an order issued by the court, the inquiry is informed by certain, inherently obvious factors, catalogued by one court as follows:

> the court should consider the entire background behind the order – including the conduct that the order was meant to enjoin or secure, the interests that it was trying to protect, the manner in which it was trying to protect them, and any past violations and warnings – in determining whether the order was sufficiently specific and in determining whether the defendant knew or should have known that his conduct was wrongful.

*Greyhound Corp.,* 508 F.2d at 532 (citations omitted).

The initial two informations filed in this matter accuse the defendant of having violated an order issued by Judge DiBianco on September 7, 2007.  That order specifically directed

> [t]hat John Murtari shall not during the pendency of this case enter onto any portion of the property owned, leased or used by the United States Government at the James Hanley Federal Building at 100 South Clinton St., Syracuse, New York ***unless prior permission is granted by this***

14

***Court.***

*United States v. Murtari*, Criminal Action No. 07-CR-387 (GJD), Dkt. No. 2 (emphasis in original). While he may disagree with the legitimacy of that order, it cannot be said that it is unduly vague or cast in terms not readily understood by the defendant in this case, whose resume reveals him to be a highly educated and intelligent individual.

The third and fourth informations allege violation of my order dated January 18, 2008, in which I conditioned defendant's release upon the directive that when engaged in any activity at the Federal Building he "does not deface or otherwise destroy government property . . . ." *United States v. Murtari*, Criminal Action No. 07-CR-428 (DEP), Dkt. No. 8 ¶ 4. The defendant well knows, based upon Judge DiBianco's memorandum decision and order dated October 16, 2007, that while chalking may not damage or destroy property, it is considered to deface, however innocuous it may seem to him. In any event, to clarify the outer limits of his permissible activities at the Federal Building, when he was released on January 17, 2008, I specifically advised the defendant that the release order to be issued "will prohibit you from defacing any property, and that includes using chalk to write on the property." *United States v. John*

*Murtari*, Criminal Action No. 07-CR-428 (DEP), Dkt. No. 14.  In sum, like Judge DiBianco's order, my January 18, 2008 order similarly sets forth a requirement which the defendant is now accused of violating in clear, unambiguous, and uncertain terms, fortified by my verbal clarification in open court.

Under these circumstances, I find that the provision of the two respective orders which the defendant is now accused of violating are not unduly vague or ambiguous.  Defendant's second argument in support of his motion to dismiss the four pending misdemeanor informations therefore also lacks merit.

III.    SUMMARY AND ORDER

Our country's justice system operates pursuant to the rule of law, under which a party, like the defendant, who believes that a court order has been erroneously or improvidently issued, may not act on that belief and disregard the order with impunity.  In this instance, the proper recourse for the defendant to pursue in order to test the validity of the two orders in issue would have been to appeal the order to a higher court, an avenue which was available to the defendant in this case, but which he chose not to avail himself, instead unilaterally deciding that he would

16

violate any order considered by him to be unconstitutional, impermissibly vague, or otherwise not to his liking.

The court has carefully considered the arguments raised by the defendant in support of his motion to dismiss the instant charges. Having determined that the two orders issued by the court establishing conditions associated with defendant's pretrial release were appropriate under the circumstances, and did not result in any further infringement of Murtari's First Amendment rights then reasonably necessary, and further concluding that the provisions of those two orders are clear and unambiguous, and therefore contain the requisite specificity necessary to support a conviction under 18 U.S.C. § 401(3), I find that defendant's motion to dismiss lacks merit. Accordingly, it is hereby

ORDERED that defendant's motion to dismiss, which is considered as having been interposed in all four of the above-captioned actions, be and is hereby DENIED in all respects; and it is further

ORDERED that defendant's request for recision or modification of my January 18, 2008 release order is hereby DENIED as academic, in view of the subsequent revocation of that order and defendant's release status; and it is further

ORDERED, that a non-jury trial will be held in connection with these matters on March 18, 2008, beginning at 10:00 am, on the Tenth Floor of United States Courthouse, 100 S. Clinton Street, Syracuse, New York 13202.

Dated:   March 11, 2008
         Syracuse, NY

_____
David E. Peebles
U.S. Magistrate Judge